USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/13/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PARTNER REINSURANCE COMPANY LTD.,

                        Plaintiff,

-v-

RPM MORTGAGE, INC. and LENDUS, LLC,

                        Defendants.

18 Civ. 05831 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

In February 2017, defendant RPM Mortgage, Inc. ("RPM"), non-party Entitle Direct Group, Inc. ("Entitle"), and plaintiff Partner Reinsurance Company Ltd. ("PartnerRe"), acting as Entitle's "Stockholder Representative," entered into an Agreement and Plan of Merger (the "Merger Agreement") under which RPM would acquire Entitle, a title insurance company. The merger never closed. This case involves competing claims as to who is liable for breaching the Merger Agreement.

PartnerRe brings one claim, for breach of contract. It alleges that RPM lost interest in the merger, and thereafter materially breached the Merger Agreement by refusing to attend the closing on the required date or to complete the closing thereafter. RPM and LendUS, LLC ("LendUS") as successor-in-interest to RPM (collectively, "defendants"), bring a counterclaim against PartnerRe, also for breach of contract. They allege that PartnerRe and Entitle, before the closing date, refused to give them accurate financial information and had inappropriate communications with Entitle's regulator, the Ohio Department of Insurance ("ODI").

PartnerRe has now moved for judgment on the pleadings with respect to defendants' counterclaim. It argues that the counterclaim does not plausibly allege damages and should be

1

dismissed with prejudice. For the reasons that follow, the Court grants PartnerRe's motion for judgment on the pleadings and dismisses the counterclaim, but does so without prejudice.

## I. Background

### A. Factual Background[1]

#### 1. The Parties and Other Key Entities

At all relevant times, Entitle, whose acquisition was the subject of the Merger Agreement, was a Delaware corporation with a principal place of business in Connecticut. Compl. ¶ 12. Its subsidiary, Entitle Insurance Company, was a Delaware corporation with a principal place of business in Ohio. *Id.* Entitle and its subsidiaries underwrote and issued title insurance and provided settlement services in connection with real estate transactions. *Id.* ¶¶ 1–2, 12.

Plaintiff PartnerRe is a Bermuda limited liability company with a principal place of business in Bermuda. Countercl. ¶ 4; Compl. ¶ 13. PartnerRe was Entitle's largest stockholder. It executed the Merger Agreement as Entitle's "Stockholder Representative." *Id.* PartnerRe also

---

[1] The facts are drawn from defendants' answer, Dkt. 15 at 1–13 ("Answer"), defendants' counterclaim, Dkt. 15 at 14–22 ("Counterclaim"), and documents properly incorporated by reference in or integral to the Counterclaim, including PartnerRe's initial Complaint, Dkt. 6 ("Complaint"), and the Merger Agreement, Dkt. 34-3. *See Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 500 (S.D.N.Y. 2011) ("In considering a Rule 12(c) motion, 'a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.'" (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010))); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156–57 (2d Cir. 2006). For purposes of resolving this motion, all factual allegations in the Answer and Counterclaim are presumed true. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

The Court does not consider the email or draft promissory note attached to PartnerRe's memorandum of law in support of this motion, Dkt. 33 ("Pl. Mem."), as these cannot fairly be described as integral to or incorporated within defendant's counterclaim. *See Glob. Network Commc'ns, Inc.*, 458 F.3d at 156–57. Even assuming *arguendo* that the Court could consider those two documents at this stage, neither would render defendants' counterclaim implausible.

asserts that it is the assignee of Entitle's claims against RPM, and it brings this lawsuit in both its capacity as party to the Merger Agreement and as assignee of Entitle's claims. *Id.*; Compl. ¶¶ 11, 69.

Defendant RPM was a California corporation with a principal place of business in California. Answer ¶ 14; *see* Compl. ¶ 14. RPM was a mortgage originator in the non-bank residential mortgage lending business. Answer ¶¶ 3, 24. In October 2017, however, RPM merged into LendUS, making LendUS the successor in interest to RPM and the party entitled to enforce the provisions of the Merger Agreement. Countercl. ¶ 3. LendUS is a Delaware limited liability company with a principal place of business in California. *Id.*

Entitle Direct Holdco, Inc. ("Merger Parent") is a Delaware corporation wholly owned by RPM and formed for the purpose of effectuating the merger at issue. Answer ¶ 15; *see* Compl. ¶ 15. Entitle Direct Merger Sub, Inc. ("Merger Sub") is a Delaware corporation wholly owned by Merger Parent. Answer ¶ 16; Compl. ¶ 16.

### 2. The Merger Agreement

In 2016, Entitle was facing an industry-wide slowdown. Answer ¶ 22. Early that year, Entitle sought an acquirer. *Id.* ¶ 23. RPM's CEO, Robert Hirt, expressed an interest in acquiring Entitle. *Id.* ¶ 3. RPM provided residential mortgages and could offer Entitle's title insurance and settlement services to RPM's mortgage-borrower customers. Compl. ¶¶ 1–3.[2]

On May 31, 2016, Entitle and RPM executed a Letter of Intent, updated on September 30, 2016. It provided that RPM would commence due diligence promptly and work toward finalizing an agreement and merger plan. Countercl. ¶ 5. RPM retained investment bank

---

[2] Where the Court cites facts alleged only in PartnerRe's complaint, it does so purely for context, mindful that, on this motion, all reasonable inferences must be drawn in defendants' favor. *See Koch*, 699 F.3d at 145.

Sandler O'Neil and law firms K&L Gates and Mayer Brown to assist in negotiating the Merger Agreement. Answer ¶ 30. In late 2016 and early 2017, RPM and its representatives conducted due diligence and communicated with PartnerRe and Entitle as to Entitle's financial condition. Countercl. ¶ 6; Answer ¶ 32. On February 16, 2017, RPM, Entitle, PartnerRe, Merger Parent, and Merger Sub executed the Merger Agreement. *Id.* ¶ 7; Merger Agreement at 1.

In Article III of the Merger Agreement, Entitle made various representations and warranties. Merger Agreement at 26. Relevant here, in § 3.7, Entitle represented, *inter alia*, that "since December 31, 2016 . . . there has not occurred any event that would reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect [on Entitle]. . . ." *Id.* at 29; Countercl. ¶ 8(a). A "Material Adverse Effect" was defined, in part, as "an event, circumstance, development, change or effect that (a) materially impairs the ability of [Entitle] to consummate the transactions contemplated by this Agreement or (b) is materially adverse to [Entitle] or [its] financial condition or results of operations, taken as a whole." Merger Agreement at 9; Countercl. ¶ 8(b). The agreement, however, provided that "any failure by [Entitle] to meet any projections or forecasts or estimates of revenue or earnings for any period" would not "be deemed to constitute, . . . or be taken into account in determining whether there has been, a Material Adverse Effect . . . ." *Id.*

Separately, in § 3.9, Entitle represented that it was in material compliance with all applicable laws and was not the subject of any material pending—or, to its knowledge, any threatened—regulatory proceedings that had not been resolved to the satisfaction of a relevant governmental entity. Merger Agreement at 29–30; Countercl. ¶ 8(c).

Article V set out the parties' respective covenants. Merger Agreement at 47. Relevant here, § 5.3 granted representatives of RPM "reasonable access" to Entitle's books and records

4

"upon reasonable notice," provided that such inspection not "interfere unreasonably with the operation of" Entitle's business. *Id.* at 48; Countercl. ¶ 8(d). And § 5.4(a) required the parties to "use reasonable best efforts . . . to consummate and make effective . . . the transactions contemplated by this Agreement." *Id.*

> Further, § 5.4(b) required the parties to:
>
> (i) cooperate in all respects with each other in connection with any communication, filing or submission relating to the receipt of any Governmental Approval; (ii) keep the other Parties and/or their respective outside counsel promptly informed of material communications relating to the receipt of any Governmental Approval; (iii) consult with each other in advance of any meeting or conference with any Governmental Entity; and (iv) permit outside counsel for the other Parties to review in advance any submission, filing or communication (and documents submitted therewith) intended to be given by it to any Governmental Entity and consider in good faith the views of the other Parties in connection with any proposed communication with any Governmental Entity . . . .

Merger Agreement at 49; *see* Countercl. ¶ 8(e). Section 5.4(d), however, stated that RPM would not be obliged to agree to any limitation, requirement, or condition in order to obtain governmental approvals if such obligation would, *inter alia*, "require any material capital contribution, capital support arrangement or guarantee for the benefit of [Entitle]." Merger Agreement at 49; Countercl. ¶ 8(f).

The Merger Agreement set various conditions for RPM's obligation to close the deal. Section 8.2 required that Entitle's representations and warranties be true and correct as of the Closing Date, unless their failure to be true would not have a Material Adverse Effect, *id.* at 57–58, and that Entitle's covenants and agreements had been performed in all material respects, *id.* at 58. Additionally, § 2.9 required that the Closing Date be no later than 5 business days after the closing conditions were satisfied or at another time that the parties "may mutually agree upon in writing." *Id.* at 18; *see* Countercl. ¶ 8(h). And § 9.1 set May 31, 2017 as the transaction's "Outside Date," after which either party had the right to terminate the Merger Agreement if the

5

transaction had not yet closed. Section 9.1, however, gave Entitle the option to extend the Outside Date for up to 3 additional months if the only closing condition yet to be satisfied was "the Ohio Department [of Insurance's] approval of the Ohio Form A . . . ." *Id.* at 59–60.

### 3. Events Leading to the Merger's Outside Date—and the Failure of the Merger to Close

Following the February 16, 2017 execution of the Merger Agreement, defendants allege in their Counterclaim, they worried that "Entitle's financial condition had significantly worsened [and] that its actual performance had not been consistent with the financial information previously provided to RPM." Countercl. ¶ 9. RPM sought to resolve these concerns. *Id.* Invoking its right to access Entitle's books and records under § 5.3 of the Merger Agreement, RPM "repeatedly ask[ed] for access to accurate financial information, a meaningful explanation for the decline in Entitle's financial condition, and an explanation for the conflicts that existed in the financial information that had been provided." *Id.* ¶ 10. In spring 2017, Entitle personnel provided RPM with financial statements, which allegedly reflected a significantly larger loss than had been projected, and vouched for the accuracy of these financial statements. *Id.* ¶ 11.

During this same period, the Ohio Department of Insurance ("ODI") was conducting a regulatory review of the merger to ensure that Entitle remained adequately capitalized. *Id.* ¶ 9; Compl. ¶ 6. RPM grew concerned either that PartnerRe and Entitle had given ODI inaccurate financial statements—or that information that had been accurate when submitted to ODI was no longer accurate. *Id.* ¶¶ 9, 12. Defendants allege that, when RPM raised these concerns, Entitle responded that the updated financials "were actually only projections" and the "financial picture reflected by the projections [was] 'knowingly inaccurate.'" *Id.* ¶ 13.

Compounding these concerns, on May 24, 2017 a representative of Entitle allegedly told RPM's regulatory counsel that "nothing material" had been communicated to ODI recently. *Id.* ¶

6

14. The next day, however, Entitle's regulatory counsel, Mary Jo Hudson, informed RPM's counsel that ODI had identified a need for additional capital based on Entitle's March financials, and that Entitle's CEO Steve Palmer had told an ODI analyst that, as a source of capital, Entitle could draw down on PartnerRe's commitment to provide a loan of up to $1.5 million within 6 months after the closing. *Id.* ¶ 15. In fact, defendants allege, "neither Entitle nor PartnerRe had the right or authority to pledge the $1.5 million loan, which was for the sole benefit of RPM, to satisfy ODI's demand for additional capital." *Id.*

In the final week leading up to the May 31, 2017 Outside Date, RPM made repeated requests for updated financial records, but Entitle and PartnerRe refused these requests. *Id.* ¶ 18. Entitle and PartnerRe also allegedly refused to permit RPM to contact ODI, and refused to participate in a joint meeting or call with ODI to discuss the accuracy of the financial information provided. *Id.*

On May 31, 2017, Entitle notified RPM of its desire to extend the deadline for closing, and, unbeknownst to RPM, Entitle's counsel communicated to ODI that the deadline had been extended. *Id.* ¶ 19. By June 2, 2017, ODI provided the necessary regulatory approval for the merger. *Id.* Although Entitle and PartnerRe believed that RPM now had an obligation to close, RPM made "clear that it would not proceed to closing until PartnerRe and Entitle honored their obligation of transparency under the Merger Agreement and satisfied the pre-closing conditions." *Id.* ¶ 22. RPM's counsel did not attend a purported closing held at the offices of Entitle's counsel on June 9, 2017. Answer ¶ 53. Entitle and PartnerRe never responded to RPM's requests for additional information, and the merger never closed. Countercl. ¶ 23.

**B.     PartnerRe's Complaint**

On July 3, 2018, PartnerRe filed the Complaint against LendUS and RPM, claiming that RPM's failure to close the acquisition of Entitle was a breach of contract. Compl. ¶ 1. The

7

Complaint alleged that RPM had known that Entitle was losing money, *id.* ¶¶ 3, 25, but believed it could make Entitle profitable by cross-selling title insurance to RPM's mortgage-borrower customers, *id.* ¶¶ 2, 26. It alleged that RPM, with the help of an experienced investment bank and sophisticated law firms, had conducted extensive due diligence on Entitle's business and finances, and ultimately agreed to purchase Entitle. *Id.* ¶¶ 4, 29, 30. The Complaint further alleged that the Merger Agreement contemplated that Entitle would continue to suffer losses between the signing date and the closing, and even included a formula under which the merger price at closing would be reduced if Entitle's pre-closing losses exceeded a negotiated threshold. *Id.* ¶¶ 4, 42.

But, the Complaint alleged, RPM changed its mind after signing the Merger Agreement, failing to show up for the closing and refusing to close the merger thereafter, despite obtaining ODI's regulatory approval. *Id.* ¶¶ 5, 49–53. The Complaint alleged that RPM then came up with pretextual excuses that RPM claimed relieved it of the obligation to close the merger. These included claiming that Entitle had suffered a Material Adverse Effect, that Entitle and PartnerRe had improperly limited RPM's access to Entitle's financial data, and that Entitle and PartnerRe had inappropriately communicated with ODI. *Id.* ¶¶ 6–7, 56. After RPM allegedly refused to close, the Complaint alleges, Entitle eventually was acquired for significantly less money by Radian Group, a mortgage insurance company, and incurred significant additional expenses in the process. *Id.* ¶¶ 8–9, 63–64.

C. **Defendants' Answer and Counterclaim**

On September 7, 2018, LendUS and RPM filed their Answer and Counterclaim, which made the contract-breach allegations outlined above against PartnerRe. Dkt. 15. On September 28, 2018, PartnerRe filed an answer to defendants' Counterclaim. Dkt. 18.

On March 22, 2019, PartnerRe filed the instant motion for judgment on the pleadings seeking the dismissal with prejudice of defendants' Counterclaim, Dkt. 32, along with its memorandum of law in support, Pl. Mem., and the declaration of Edward Normand, Dkt. 34 ("Normand Decl."). On April 4, 2019, defendants filed a memorandum of law in opposition, Dkt. 36 ("Def. Mem."). On April 12, 2019, PartnerRe filed its reply, Dkt. 40 ("Pl. Reply").

## II. Legal Standards

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6). *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010); *accord L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011). Thus, the Court accepts all of the non-movant's factual allegations as true and draws all reasonable inferences in the non-movant's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion for judgment on the pleadings, a party must plead sufficient factual allegations "to state a claim for relief that is plausible on its face." *Id.* at 570. The complaint or counterclaim thus must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 203 (S.D.N.Y. 2015) ("A motion to dismiss a counterclaim for failure to state a claim is evaluated using the same standard as a motion to dismiss a complaint."). Further, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "A grant of a motion pursuant to Rule 12(c) is proper 'if, from the pleadings, the moving party is entitled to judgment as a matter of law.'" *Dargahi v. Honda*

*Lease Tr.*, 370 F. App'x. 172, 174 (2d Cir. 2010) (summary order) (quoting *Burns Int'l Sec. Servs., Inc. v. Int'l Union*, 47 F.3d 14, 16 (2d Cir. 1995) (per curiam)).

"On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L–7 Designs, Inc.*, 647 F.3d at 422 (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)). The Court may also review any document incorporated by reference in the pleadings. *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004). Finally, the Court may consider a document not specifically incorporated by reference but on which the pleading at issue relies and which is integral to it. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). If the allegations of a pleading "are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the [pleading]." *Sazerac Co. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994); *see also Feick v. Fleener*, 653 F.2d 69, 75 & n.4 (2d Cir. 1981).

## III. Discussion

PartnerRe moves for judgment on the pleadings against defendants' counterclaim for breach of contract.

### A. Breach of Contract Counterclaim

To establish a breach of contract under Delaware law,[3] a plaintiff must demonstrate "first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." *VLIW Tech., LLC v. Hewlett–Packard Co.*, 840 A.2d 606, 612 (Del. 2003); *see Empire Merchs., LLC v. Merinoff*, No.

---

[3] The parties agree that Delaware substantive law applies, under the Merger Agreement's choice of law provision. *See* Merger Agreement at 69.

16 Civ. 9590 (JMF), 2017 WL 5176384, at *5 (S.D.N.Y. Nov. 8, 2017). The parties do not dispute the existence of the Merger Agreement, *see* Countercl. ¶ 26; Compl. ¶ 4, and while PartnerRe casts the facts supporting its ostensible breach as "scant," Pl. Mem. at 9, PartnerRe does not contest defendants' pleading that it breached. In any event, the Court finds that defendants have pled facts that make plausible the claim that PartnerRe breached one or more of its obligations under the Merger Agreement. These include its covenants (1) to provide reasonable access to Entitle's books and records, Merger Agreement at 48, and (2) to cooperate and consult with RPM in connection with any communication with ODI, *id.* at 49.

In moving for dismissal, PartnerRe argues the defendants have not plausibly alleged the third element—damages. As to this element, a mere "allegation that defendant 'suffered damages' without particular facts as to how she was damaged does not satisfy *Twombly* and *Iqbal*." *Int'l Bus. Machines Corp. v. Dale*, No. 11 Civ. 951 (VB), 2011 WL 4012399, at *2 (S.D.N.Y. Sept. 9, 2011); *see Miller v. HSBC Bank U.S.A., N.A.*, No. 13 Civ. 7500 (RWS), 2015 WL 585589, at *4 (S.D.N.Y. Feb. 11, 2015) (plaintiff's "unsupported claim that she 'suffered damages' . . . is not enough to properly plead the damages element of a breach of contract claim"); *Jinno Int'l Co. v. Premier Fabrics, Inc.*, No. 12 Civ. 07820 (LGS), 2013 WL 4780049, at *3 (S.D.N.Y. May 24, 2013) (breach of contract claim stating only that counterclaimant "'suffered damages in a sum to be determined at trial' . . . fail[ed] to support an inference that [counterclaimant] has actually suffered damages as a result of [plaintiff's] breach"); *Comfort Inn Oceanside v. Hertz Corp.*, No. 11-CV-1534 (JG), 2011 WL 5238658, at *8 (E.D.N.Y. 2011) ("A

claim for breach of contract must rest on more than a conclusory allegation that the defendant's breach caused damages, even where the exact amount of damages is alleged.").[4]

Here, in language akin to that pled—and held inadequate—in *Jinno*, the Counterclaim alleges only that defendants "ha[ve] been and continue[] to be harmed as a result of PartnerRe's and Entitle's multiple breaches of the Merger Agreement" and seeks only "damages of an amount to be determined at trial." Countercl. ¶ 28. Nonetheless, although this formulation has been held inadequate in other cases in this District, "determining whether a complaint states a plausible claim to relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Empire Merchs.*, 2017 WL 5176384, at *6 (quoting *Iqbal*, 556 U.S. 662, 679 (2009)). The Court accordingly examines in turn the Counterclaim's pleadings as to the two types of damages that defendants claim resulted from PartnerRe's breach: (i) "the time effort, and funds expended in connection with the merger process"; and (ii) "the benefit of the bargain that was never realized." Def. Mem. at 3.

### 1. "Time, Effort, and Funds" Damages

Defendants first argue that they have adequately alleged damages in the form of the "time, effort, and funds expended in connection with the merger process." *Id.* They note the Counterclaim's factual allegations that in 2016 and 2017, RPM conducted due diligence and communicated with Entitle in connection with RPM's anticipated purchase of Entitle; the parties executed the Merger Agreement in February 2017 and moved toward closing; RPM made repeated requests for updated financial records in light of concerns about Entitle's financial condition and potentially misleading statements made to ODI, but Entitle and PartnerRe refused

---

[4] Defendants attempt to distinguish *Jinno* and *Miller*, on the ground that, in each case, a separate element of the breach of contract claim was held inadequately pled. Def. Mem. at 4. While this is true, each case squarely holds, as an independent ground for dismissal, that the complaint's pleadings as to the damages element were too threadbare to stand.

these requests; and Entitle and PartnerRe refused to permit RPM to contact ODI or to participate in a joint call with ODI. Def. Mem. at 2–3 (citing Countercl. ¶¶ 6–9, 12–13, 18).

At the outset, to the extent defendants claim damages from "time, money, and effort" they invested in "contractual negotiations and due diligence," *id.* at 3, prior to the execution of the Merger Agreement, these are not cognizable damages from a claim for breach of contract. Under Delaware law, damages in a breach of contract action generally "should seek to give the nonbreaching party . . . the benefit of its bargain by putting that party in the position it would have been but for the breach." *Genencor Int'l, Inc. v. Novo Nordisk A/S*, 766 A.2d 8, 11 (Del. 2000). In assessing damages for breach of contract, "the non-breaching party is entitled to recover 'damages that arise naturally from the breach or that were reasonably foreseeable at the time the contract was made.'" *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 146 (Del. 2009) (quoting *Tackett v. State Farm Fire & Cas. Ins. Co.*, 653 A.2d 254, 264–65 (Del. 1995)). The non-breaching party must show that it "was damaged *as a result*" of the breach of an obligation. *VLIW Tech.*, 840 A.2d at 612 (emphasis added); *see LaPoint v. AmerisourceBergen Corp.*, No. Civ. A. 327-CC, 2007 WL 2565709, at *9 (Del. Ch. Sept. 4, 2007) (non-breaching party must show "that the breach of contract led to damages suffered by plaintiffs").

Defendants cannot plausibly allege that the time, money, and effort they spent either in negotiating the Merger Agreement or in conducting pre-signing due diligence *resulted* from the alleged breaches of the Merger Agreement. *See VLIW Tech.*, 840 A.2d at 612. And defendants have not identified any Delaware law permitting recovery for such pre-contract expenditures. Thus, to the extent defendants seek to recover for their wasted time, money, or effort, these must be limited to expenditures incurred *after* the Merger Agreement was executed.

13

Second, to the extent that defendants seek damages attributable to excess time, money, and effort they ostensibly invested as a result of PartnerRe and Entitle's alleged breaches of the Merger Agreement, the Counterclaim's threadbare allegations do not provide "adequate notice . . . on the issue of damages." Def. Mem. at 4 (quoting *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 516 (S.D.N.Y. 2015)). To be sure, the Counterclaim alleges with some degree of specificity the manner in which PartnerRe and Entitle breached: by obfuscating Entitle's financial condition and by engaging in inappropriate communications with ODI. But these allegations do not identify the time, money, and effort, if any, that such breaching conduct obliged defendants to incur in the period between signing and closing. Defendants' bid for "damages of an amount to be determined at trial," Countercl. ¶ 28, without elaboration, falls well short of supplying the requisite notice as reflected in the case law canvassed above.

Two of these cases underscore, in fact, that only in limited circumstances—not present here—may such cursory allegations sustain a complaint's pleading of contract damages. In *Empire Merchants*, plaintiffs brought a claim for breach of a contract's forum-selection clause, making only a "boilerplate allegation[]" as to the damages suffered. 2017 WL 5176384, at *6. Acknowledging authority to the contrary, the court held this allegation sufficient because there was "only one form of 'damages' that Empire could have suffered as a result of [the] breach of the forum-selection clause: the attorney's fees and costs that Empire incurred [as] a result of the litigation in [an improper forum]." *Id.* Under these circumstances, the court held, "it would elevate form over substance to require that Empire amend its complaint to make the nature of its 'damages' clearer." *Id.*

Similarly, in *Comfort Inn Oceanside*, involving an alleged breach by the car-rental company Hertz, the court held that allegations that a hotel "suffered damages due to '(1) a lack

14

of providing a company car . . . and (2) loss of revenue due to lack of providing cars for hotel residents were sufficient, ... but barely so." 2011 WL 5238658, at *8. "Although Comfort Inn's allegation does not fill in all the blanks as to how Hertz's alleged breach resulted in the damages it asserts," the court stated, its identification of these two species of damages "adequately alleges damages resulting from Hertz's purported breach." *Id.*

In this case, unlike in *Empire Merchants*, defendants' claim of breach is not one that lends itself to only one conceivable form of damages. And, unlike in *Comfort Inn Oceanside*, the Counterclaim here does nothing to explain how damages resulted from the purported breach. PartnerRe cannot reasonably discern from the pleadings the nature of the time, money, and effort damages allegedly incurred by RPM as a result of its and Entitle's alleged temporizing about due diligence and alleged improper contact with Ohio regulators. The Court therefore holds that the allegations as to these types of damages here are inadequately pled.

### 2. "Benefit of the Bargain" Damages

Defendants alternatively argue that the Counterclaim pleads damages reflecting "the benefit of the bargain that was never realized." Def. Mem. at 3. Defendants explain that RPM had "contracted to purchase Entitle, a company that was presented to be a valuable addition to [d]efendants' suite of mortgage service providers," but "the deal was never consummated." *Id.*

A "benefit of the bargain" theory of damages is, of course, familiar and eminently conceivable in the context of a buyer's contract breach claim alleging a seller's failure to consummate an agreed-upon merger. But defendants' Counterclaim does not allege this. Even drawing all factual inferences in favor of defendants, the Court cannot find any facts pled that support a "benefit of the bargain" theory. Quite the contrary: Whereas seller PartnerRe's Complaint alleged facts that might have supported a theory by RMP to have incurred damages of this nature, *see, e.g.*, Compl. ¶¶ 2–3 (suggesting Entitle would have considerably more value in

15

the hands of a strategic acquirer than on its own), defendants tellingly appear to have *denied* those facts, *see* Answer ¶¶ 2–3.

The Counterclaim's general allegation to the effect that defendants suffered damages thus fails to plead adequately such "benefit of the bargain" damages.

### B. Leave to Amend

PartnerRe seeks dismissal with prejudice, arguing that granting leave to amend would be futile. Def. Mem. at 6. The Court holds otherwise.

Federal Rule of Civil Procedure 15 provides that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). When a district court dismiss claims based on a deficient pleading, "[i]t is the usual practice . . . to allow leave to replead," *Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991), although "[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "'Where . . . a scheduling order governs amendments to the complaint,' and a plaintiff wishes to amend after the deadline to do so has passed, the plaintiff must show good cause to modify the deadline under Rule 16." *BPP Illinois, LLC v. Royal Bank of Scotland Grp. PLC*, 859 F.3d 188, 195 (2d Cir. 2017) (quoting *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009)).

PartnerRe argues that leave to amend would be futile "because the theory LendUS suggests it intends to develop in support of its counterclaim is inconsistent with the factual allegations it has already made." Def. Mem. at 6. It argues that various facts defendants have alleged in support of their defense—to wit, that RPM believed Entitle had suffered a Material Adverse Event and sought information from PartnerRe to pursue that avenue—conflict with

16

defendants' claim to have incurred damages form their inability to close the acquisition of Entitle at the originally agreed-upon price. Def. Mem. at 7.

That is wrong. It is hornbook law that "[u]nder Rule 8(d)(2) counterclaims may be asserted in an alternative or hypothetical manner and need not be consistent with the defenses and denials raised in the answer." 5 Charles E. Wright and Arthur R. Miller, Federal Practice and Procedure § 1282 (3d ed. 2007). Defendants may engage in "alternative and hypothetical forms of pleading . . . in asserting both defenses and counterclaims to the original claim." *Id.*

The Court here construes the defenses raised in the Answer and the theory of damages which defendants state that they seek to pursue in a Counterclaim as permissible alternative forms of pleading. Defendants assert, in defending against PartnerRe's breach of contract claim, that Entitle may have suffered a Material Adverse Effect—relieving RPM of a duty to close under the Merger Agreement. Such an assertion, however, does not preclude defendants from separately asserting that other breaches by PartnerRe and Entitle prevented defendants from realizing the benefit of their bargain. PartnerRe itself acknowledges possible synergies, such that Entitle held potentially significant value for defendants if merged into a larger business in which defendants could cross-sell Entitle's title insurance to their mortgage-borrower customers. Compl. ¶ 2. Unaware as of the pleadings stage as to Entitle's precise financial status and the extent of its apparent reversals, defendants have the right to plead in the alternative both that (1) Entitle's losses amounted to a Material Adverse Effect and (2) they did not, and that Entitle, despite deteriorating financials, was worth more to defendants than the negotiated price of the acquisition.

Nor would granting leave to replead cause undue delay or undue prejudice to PartnerRe. Defendants do not seek to add any claims or parties. An amended counterclaim clarifying the

17

allegations as to damages will implicate substantially the same areas of fact and law—and necessitate largely the same discovery—as PartnerRe's claim and defendants' now-dismissed counterclaim. *See Shulman v. Chaitman LLP*, No. 17 Civ. 9330 (VM), 2019 WL 3244497, at *14-15 (S.D.N.Y. July 19, 2019) (granting leave to amend, despite mild delay, where plaintiff did not seek to add claims and where court did not find undue prejudice).[5]

The Court therefore finds that "the balance of considerations thus weighs in favor of granting" leave to amend. *Id.* at 15. The Court grants defendants leave to amend so as to replead the same Counterclaim, while amplifying on their allegations of damages, to concretely allege: (i) the excess time, money, and effort incurred by defendants after execution of the Merger Agreement as a result of PartnerRe's alleged breaches; and/or (ii) defendants' theory of benefit of the bargain damages, *i.e.*, the value in excess of the merger price that Entitle, even if then in a deteriorated financial state, held for RPM. The Court does not otherwise grant leave to replead.

## CONCLUSION

For the foregoing reasons, the Court grants PartnerRe's motion for judgment on the pleadings to the extent PartnerRe seeks dismissal of defendants' counterclaim. The dismissal is, however, without prejudice to defendants' right to replead, consistent with the parameters set in this decision. The Court respectfully requests that the Clerk of Court terminate the motion pending at Dkt. 32.

In the event defendants intend to so file, such an amended counterclaim is due within 14 days of this decision. While the Court assumes that the discovery necessitated by an amended

---

[5] PartnerRe also argues that the time to amend has passed. Defendants, however, stated a desire to replead—in the event plaintiffs' motion to dismiss the Counterclaim were granted—in their opposition to this motion filed April 5, 2019, before the April 10, 2019 deadline set in the parties' case management plan of March 11, 2019, Dkt. 29.

18

counterclaim would be within the scope of the parties' existing discovery plan, the Court would be receptive to a limited extension of the current deadlines for discovery in the event the parties represent that additional time is needed to accommodate discovery on the amended counterclaim.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: August 13, 2019
　　　　New York, New York