# RF ROCHE FREEDMAN

April 2, 2021

**Via ECF**

Honorable Paul A. Engelmayer
United States District Court, Southern District of New York
40 Foley Square, Room 2201
New York, NY 10007

Re:     *Partner Reinsurance Co. Ltd. v. RPM Mortgage, Inc. et al.*, Case No. 1:18-cv-05831

Dear Judge Engelmayer:

I write on behalf of Plaintiff Partner Reinsurance Company Ltd. in response to Defendants' March 26, 2021, letter seeking judgment as a matter of law. The *many* disputed material facts establish the impropriety of summary judgment. At this late stage, and given Defendants' repeated delays, judicial economy is properly served by proceeding directly to a bench trial.

**PartnerRe Did Not Breach the Merger Agreement (RPM Did)**. RPM, not PartnerRe, breached the Merger Agreement. RPM asserts that PartnerRe breached obligations that would have kept RPM informed regarding whether additional capital requirements or an "MAE existed," but ODI granted unconditional approval (*e.g.*, Ex. 1, L. Hamilton Dep at 180:18-181:24), and would have raised—but chose not to—any near-term requirement for additional capital prior to that approval (Ex. 2, Berliner Report ¶¶ 13(g), 122-23; Ex. 3, Berliner Dep. at 129:10-131:23). Moreover, RPM's own financial expert testified that he was not even asked to opine on whether Entitle suffered an MAE (Ex. 4, Bush Dep. at 32:7-15), an issue on which RPM would bear the heavy burden of proof. *See, e.g.*, *Akorn Inc. v. Fresenius Kabi AG*, No. CV 2018-0300-JT, 2018 WL 4719347, at \*47, \*53 (Del. Ch. Oct. 1, 2018), *aff'd*, 198 A.3d 724 (Del. 2018).

PartnerRe did not breach Section 5.3(a) of the Merger Agreement, which provides for "reasonable access to the books and records" of Entitle. (Dkt. No. 134-01 at 54, § 5.3(a).) RPM identifies no unprovided "books and records," and none that were "actively conceal[ed]." To the contrary, the cited email (PR00019239, Dkt. 134-2) refers to projections that RPM asked Entitle to *create* over a Memorial Day weekend, not materials maintained in the ordinary course. (Ex. 5, ENT00097792 (revised projections provided at RPM's "request").) Those projections were not finalized or "fully vetted," as Entitle's board had not yet reviewed or approved them. (Ex. 6, Iannarone Dep. at 200-02; Ex. 7, Palmer Dep. at 183-91, 240-43.) When the projections were finalized on June 2—a mere *two days* later—they were promptly provided to RPM. (Ex. 5, ENT00097792.) RPM failed to provide Entitle with reasonable notice that it wanted Entitle's assistance in creating revised versions of the projections that RPM had filed with ODI, and RPM's ulterior motives for seeking the revised projections—as a way to escape its obligation to close the transaction—reveal its abuse of its qualified right of access. (*See, e.g.*, Ex. 8, LENDUS_00024066, at -24066 ("It seems we should also look at getting turned down by the commissioner. Is that a possibility?"); Ex. 9, Spina Dep. at 313-325.) In addition, because the requested projections were provided promptly, RPM can show no prejudice and thus no actionable breach. *See, e.g.*, *Lola Cars Int'l Ltd. v. Krohn Racing, LLC*, C.A. Nos. 4479-VCN, 4886-VCN, 2010 WL 3314484, at \*17 (Del. Ch. Aug. 2, 2010) (defendant's cooperation following alleged breach undermines any alleged actionable breach).

Nor did PartnerRe breach Section 5.4(b) of the Merger Agreement. Delaware courts analyze the obligation to cooperate by reference to the standards of the implied covenant of good faith and fair dealing, *see Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 440 (Del. 2005), which presents a classic factual issue for the factfinder to resolve. *See, e.g., Caruso v. City of New York*, No. 06 Civ. 5997 (PAE), 2012 WL 136251, at *5 n.8 (S.D.N.Y. Jan. 18, 2012). The evidence at trial will show that Plaintiff did not violate the cooperation obligation.

*First*, Plaintiff's communications with ODI were entirely proper and "consistent with the customary practices" of regulated insurance companies. (*See, e.g.*, Ex. 2, Berliner Report ¶¶ 13(b), 96-106.) RPM's expert offered no testimony to the contrary. (Ex. 9, Spina Dep. at 47:9-53:24.) There was no possible prejudice to RPM because the allegedly improper email, dated May 24, 2017, contained information that RPM itself had already communicated to ODI. (Ex. 10, LENDUS_00037778, at -37778 (on April 26, 2017, RPM's regulatory counsel emailed ODI: "Partner Re will provide $1.5 million in loan funding to EnTitle Direct Holdco, Inc. at the closing of the merger. These funds will then be contributed . . . to the Domestic Insurer via a capital contribution.").) And contrary to RPM's suggestion that RPM was not kept promptly apprised of relevant communications with ODI, Ms. Noack's May 25, 2017, email thanks Mr. Palmer for forwarding "the most recent communication from the OH commissioner with respect to the additional capital contribution request." (Ex. 11, ENT00096311.)[1]

*Second*, RPM's claim that PartnerRe violated Ohio law by failing to provide ODI with revised pro forma financial projections is wrong. (*See, e.g.*, Ex. 2, Berliner Report ¶ 13(d) ("Entitle's preference for not submitting revised pro formas to ODI was reasonable and consistent with the typical practices of sellers and their counsel in connection with Form A applications."); *see also id.* ¶¶ 114-19.) The claim that ODI somehow "forbade" RPM from doing so is contradicted by the facts and by RPM's own expert. (*See, e.g., id.* ¶ 13(d) ("[N]otwithstanding Entitle's reasonable objections" to submitting revised pro forma financials, "RPM could have filed revised pro formas had it chosen to do so."); *id.* ¶ 121.) Indeed, neither RPM nor its expert have ever articulated why they could not have contacted ODI regarding the updated pro forma projections if they had chosen to do so (because they plainly could have). (Ex. 9, Spina Dep. at 213:16-214:24 ("Anyone that has a phone, e-mail can contact the Department.").)

All of this evidence—and the much further evidence for trial, uncited only because of space constraints—shows that PartnerRe did not breach the Merger Agreement and thus raises genuine disputes of material fact precluding summary judgment.

**Discovery Has Substantiated Plaintiff's Alter Ego Claims**. Alter ego liability is "a fact-specific" issue that is "generally submitted" to the factfinder. *Martin Hilti Family Tr. v. Knoedler Gallery, LLC*, 386 F. Supp. 3d 319, 356 (S.D.N.Y. 2019). Defendants' proposed motion, moreover, is

---

[1] Subsequent to RPM's request for "[a]ll 2017 correspondence with regulators," which Mr. Palmer reasonably found excessive at that late date, RPM's counsel clarified that it sought communications "discussing or referencing the capital adequacy of Entitle," (Ex. 12, KLG00001708 at -709), which Entitle promptly provided (Ex. 13, BC_008174 & attachments), and which RPM's key decision-makers do not recall even reviewing (Ex. 14, Noack Dep. at 227:7-230:15; Ex. 15, R. Hirt Dep. at 291:2-15).

premised on a combination of arguments that the Court has already rejected and that cannot support judgment as a matter of law.

The Court held that PartnerRe has adequately alleged alter ego liability (Dkt. No. 120), and these allegations are supported by ample evidence (*see* Dkt. No. 114, ¶¶ 3-15) showing that the Hirts transferred money in and out of RPM "whenever [they] wanted" (Dkt. No. 114-1, at 131:10-13), including to cover personal expenses (such as buying "real estate or something," Dkt. No. 114-3 at 160:12-22); that the Hirts owed approximately $12.5 million to RPM on the closing date (*see* Dkt. No. 114-4); and that RPM did not close because it was concerned about its cash position (*see, e.g.*, Dkt Nos. 114-4, 114-7, 114-9, 114-10, 114-12, 114-13). The more recently uncovered evidence further supports alter ego liability, including LendUS's general ledgers, corporate documents, and testimony—which collectively show that the Hirts personally withdrew millions of dollars from RPM from January 1, 2017, through October 31, 2017 (*see* Ex. 16, Imburgia Report ¶¶ 68-70); that those "loans" were not reflected in contemporaneous promissory notes or otherwise approved in board meetings (*id.* ¶¶ 66-67, 73); that if RPM purchased Entitle, it would have had insufficient cash, by approximately $6 million, to comply with its financial covenants with lenders (*see id.* ¶¶ 54-56); and that although LendUS's Rule 30(b)(6) witness claimed that RPM could have used its shareholders' cash to acquire Entitle if RPM's board (comprised of those same shareholders) approved (*see* Ex. 17, LendUS Dep. at 110:24-113:15, 216:24-217:17), Rob Hirt had access to only ▮▮▮▮▮ in cash (*see* Ex. 18, ODI02564, at -2565).

The documents Defendants now cite do not refute the foregoing, let alone establish the absence of disputed material facts. If RPM were a "viable" entity that did not engage in fraud (facts contrary to Mr. Imburgia's testimony that there were "red flags" regarding RPM's operations, (Ex. 19, Imburgia Dep. at 72:9-73:7, 77:2-80:23, 92:1-93:22)), the Court already held that "a plaintiff need not prove that there was actual fraud," or that the corporate entity was "destitute." (Dkt. No. 120, at 18-19, 23.) And the supposed fact that RPM's cash as of June 2017 exceeded the agreed-upon purchase price of Entitle cannot establish that RPM was adequately capitalized in light of evidence demonstrating that RPM could not have acquired Entitle without breaching financial covenants. Defendants' other evidence—which consists of assorted closing documents relating to the Merger Agreement, and an audited financial statement indicating that RPM engaged in transactions with "related parties"—do not disprove alter ego liability either; it simply further demonstrates that the Hirts frequently and personally transacted with RPM, and thus *supports* a finding of alter ego liability. (*See* Dkt. No. 120 at 17-18.)

**Plaintiff Has Standing Under the Merger Agreement**. The Court has already rejected RPM's standing argument as a basis for dismissal (*see* Dkt. No. 97), and RPM presents no new evidence now. Section 11.6 of the Merger Agreement prohibits assignment of contractual rights only, not of claims for breach of contract. (Dkt. No. 134-01 at 78, § 11.6.) And RPM ignores a second, independent basis for standing: PartnerRe is also suing in its capacity as stockholder representative, through which it has standing as a party to the Merger Agreement. (*Id.* at 7, 83.) Finally, at this stage of the case, reraising a failed argument serves no purpose beyond delay, because the Court may properly consider this argument at trial, where "defendants' contractual 'standing' argument is closely connected to []merits issues in this case." (Dkt. No. 97 at 6 n.2.)

4

Respectfully submitted,


/s/ *Amos Friedland*
    Amos Friedland