UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

PARTNER REINSURANCE COMPANY LTD.,

                Plaintiff,

        -v-

RPM MORTGAGE, INC., LENDUS, LLC,
ERWIN ROBERT HIRT, TRACEY HIRT, and
THE ROBERT HIRT AND TRACEY NAJARIAN
HIRT REVOCABLE LIVING TRUST,

                Defendants.

------------------------------------------------------------

LENDUS, LLC,

                Counterclaim Plaintiff,        18 Civ. 5831 (PAE)

        -v-                                             OPINION & ORDER

PARTNER REINSURANCE COMPANY LTD.,

                Counterclaim Defendant.

------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

      This case arises from a failed merger agreement between defendant RPM Mortgage, Inc. ("RPM") and non-party Entitle Direct Group, Inc. ("Entitle"), in connection with which plaintiff Partner Reinsurance Company Ltd. ("PartnerRe") served as the "Stockholder Representative" for Entitle. PartnerRe has sued RPM, RPM's successor in interest, LendUS, LLC ("LendUS"), and those companies' owners (together with RPM and LendUS, "defendants"), alleging that RPM's failure to consummate the merger breached the merger agreement. *See* Dkt. 121 ("Am. Compl."). Defendants contend that Entitle, not they, breached the agreement, and have brought a counterclaim for breach of contract against PartnerRe.

Before the Court is defendants' motion for summary judgment, which argues that PartnerRe lacks contractual standing to pursue this action, either in its role as Stockholder Representative or under Entitle's assignment to PartnerRe of its right to do so. Because the Court finds Entitle's assignment to PartnerRe valid, it denies that motion.

## I. Background

### A. Factual Background[1]

#### 1. Parties and Other Relevant Entities

RPM was a California-based mortgage originator. Def. 56.1 ¶ 1. LendUS, RPM's successor in interest, is a Delaware limited liability company ("LLC"). *Id.* ¶ 2. Robert Hirt and Tracey Hirt are officers of LendUS, and indirectly own 96% of LendUS. Am. Compl. ¶ 86.

PartnerRe is a Bermuda LLC. Def. 56.1 ¶ 3. Entitle was a Delaware corporation with its principal place of business in Connecticut. *Id.* ¶¶ 4–5. During the period relevant here, PartnerRe held the majority of Entitle's Series B preferred stock. *Id.* ¶ 6.

---

[1] The Court draws its account of the facts from the parties' submissions on summary judgment, including defendants' Local Rule 56.1 statement, Dkt. 146 ("Def. 56.1"); PartnerRe's counter-statement to defendants' Local Rule 56.1 statement, Dkt. 148 ("Pl. 56.1"); and defendants' response to PartnerRe's counter-statement, Dkt. 152 ("Def. Reply 56.1"). The Court has also considered the declaration of Thomas A. Warns, Esq., in support of defendants' motion, Dkt. 147 ("Warns Decl."), and attached exhibits; and the declaration of Amos Friedland, Esq., in opposition to defendants' motion, Dkt. 150 ("Friedland Decl."), and attached exhibits.

Citations to a party's 56.1 statement incorporate the evidentiary materials cited therein. When facts stated in a party's 56.1 statement are supported by testimonial, video, or documentary evidence and not denied by the other party, or denied by a party without citation to conflicting admissible evidence, the Court finds such facts to be true. *See* S.D.N.Y. Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in statement required to be served by the opposing party."); *id.* Rule 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

### 2. The Merger Agreement and Failure to Close

Between 2016 and 2017, RPM and Entitle communicated and performed due diligence about RPM's potential acquisition of Entitle. *Id.* ¶ 7. Those negotiations led to a February 2017 Agreement and Plan of Merger between RPM, Entitle, PartnerRe as Stockholder Representative, and two entities formed for purposes of the merger,. *Id.* ¶¶ 8–10; Warns Decl., Ex. A ("Merger Agreement"). As relevant here, that agreement (1) identified PartnerRe as Entitle's Stockholder Representative and "Party" to the Agreement, with specific responsibilities and rights, Merger Agreement at 1, ¶ 11.12; and (2) contained the following anti-assignment clause:

> *Successors and Assigns.* No Party to this Agreement may directly or indirectly assign any or all of its rights or delegate any or all of its obligations under this Agreement without the express prior written consent of each other Party to this Agreement. This Agreement shall be binding upon and inure to the benefit of the Parties to this Agreement and their respective successors and permitted assigns. Any attempted assignment in violation of this *Section 11.6* shall be void.

*Id.* ¶ 11.6.

On June 29, 2017, Entitle terminated the Merger Agreement. *Id.* ¶¶ 12–13. PartnerRe alleges that Entitle did so only after RPM breached the agreement by failing to attend a scheduled closing and then refusing to close the deal. Am. Compl. ¶ 97. Defendants deny that they breached the Merger Agreement. They claim that Entitle breached the agreement by concealing information from RPM and improperly communicating *ex parte* with Entitle's regulator. Dkt. 128 ¶¶ 37–38.[2]

---

[2] PartnerRe's Amended Complaint and defendants' Counterclaim set forth, in more detail, each sides' factual allegations. For purposes of this motion, which relates only to PartnerRe's contractual standing, the parties have, helpfully, not set forth the full factual bases for their claims and defenses, instead focusing on the limited facts relevant to the pending dispute. The Court thus does not here reprise the parties' allegations, which are summarized in prior rulings in the case. *See* Dkts. 59, 97, 120. The Court relies here only on the evidentiary record presented in connection with defendants' motion for summary judgment.

### 3. Entitle's Acquisition by Radian

After terminating the Merger Agreement, Entitle began communicating with other potential buyers. Def. 56.1 ¶ 13. At the end of 2017, it entered into a merger agreement with non-party Radian Title Services, Inc. ("Radian"). *Id.* ¶ 15; Warns Decl., Ex. E ("Radian Agreement"). That relationship proved more successful than Entitle's with RPM: in March 2018, Entitle and Radian closed their merger agreement. Def. 56.1 ¶ 16.

### 4. The Assignment Agreement

Also in March 2018—on the same day that Radian closed on its acquisition of Entitle—PartnerRe, Entitle, and Radian executed an Assignment and Cooperation Agreement. *Id.* ¶ 17; Warns Decl., Ex. F ("Assignment"). Under that agreement, Entitle granted PartnerRe the exclusive rights "in and to claims of any kind against RPM and its Affiliates and its and their officers or directors, or against any other Person, arising from or relating to the" failed merger agreement. Assignment ¶ 2.1.

## B. Procedural Background

On July 3, 2018, PartnerRe filed the original complaint against RPM and LendUS. Dkt. 6. On September 7, 2018, RPM answered and counterclaimed. Dkt. 15. On September 28, 2018, PartnerRe answered the counterclaim. Dkt. 18. On March 22, 2019, PartnerRe moved for judgment on the pleadings, under Federal Rule of Civil Procedure 12(c). Dkts. 32–34. On August 13, 2019, the Court granted that motion, but also granted RPM and LendUS leave to replead. Dkt. 59. On August 27, 2019, RPM and LendUS filed an amended counterclaim, Dkt. 60, which PartnerRe answered on September 11, 2019, Dkt. 68.

On October 8, 2019, after the close of fact discovery, PartnerRe moved for leave to file an amended complaint adding defendants under an alter-ego theory of liability. Dkts. 72–74. The same day, RPM and LendUS moved for a pre-motion conference to address their

contemplated motion for summary judgment, which would argue, in part, that the Court lacked subject-matter jurisdiction over the case because PartnerRe lacked standing to pursue its claims. *See* Dkt. 76 at 1–3 & n.1. On October 15, 2019, PartnerRe responded, arguing, as relevant here, that the proper vehicle for defendant's jurisdictional motion was under Rule 12(h)(3), not summary judgment. Dkt. 77. On October 16, 2019, defendants filed another letter, seeking to stay briefing on PartnerRe's motion for leave to amend pending resolution of its motion to dismiss. Dkt. 78. The same day, PartnerRe responded, arguing that, if the Court were inclined to stay any deadlines, it should do so as to all pending deadlines. Dkt. 79. "In light of the substantial questions relating to standing (and thus this Court's jurisdiction) raised" by these filings, the Court adjourned the pending deadlines in the case, including briefing on PartnerRe's motion for leave to amend, and ordered defendants to move to dismiss under Rule 12(h). Dkt. 80.

On June 3, 2020, after briefing on that motion, the Court denied it. Dkt. 97. The Court held that it had subject-matter jurisdiction over PartnerRe's claims because PartnerRe had alleged an injury in fact caused by defendants, which an award of damages would redress, and therefore denied the Rule 12(h) motion. *Id.* at 3–4. The Court declined to address defendants' argument on contractual standing, instead reserving that issue for summary judgment. *Id.* at 6 n.2. The same day, the Court directed the parties to submit a proposed schedule for the remaining dates in the case, including PartnerRe's motion for leave to amend. Dkt. 98. On June 9, 2020, they did so. Dkts. 103–04.

On June 8, 2020, PartnerRe filed a renewed motion for leave to file an amended complaint adding alter-ego claims against Rob and Tracey Hirt and several entities they controlled. Dkt. 100. On November 13, 2020, after briefing, the Court granted that motion in part. Dkt. 120. The Court granted plaintiffs leave to add Rob and Tracey Hirt, and the trust

5

through which they owned LendUS, as defendants, on an alter-ego theory of liability, but denied the motion as to the other proposed defendants. *Id.* The Court also directed the parties to submit a joint proposed scheduling order for the remaining dates in the case, as they had proposed doing after resolution of PartnerRe's motion for leave to amend. *Id.* at 31; *see* Dkts. 118–19.

On November 18, 2020, PartnerRe filed the Amended Complaint. Am. Compl. The same day, PartnerRe notified the Court that the parties could not agree on a joint proposed schedule, in part because of the extensive discovery sought by the new defendants. Dkt. 122. On November 19, 2020, the Court expressed its "dismay[]" at counsel's inability to agree on a schedule for completing the "very limited discovery outstanding in this case," and directed the parties to do so promptly, or, "[i]n the regrettable event" that they could not do so, to submit competing proposed schedules. Dkt. 123. On November 24, 2020, each side submitted competing proposed schedules. Dkts. 124–25. On November 25, 2020, the Court adopted PartnerRe's proposal. Dkts. 126–27. On November 30, 2020, defendants answered the Amended Complaint and counterclaimed. Dkt. 129. On December 7, 2020, PartnerRe answered the counterclaim. Dkt. 130.

On March 26, 2021, defendants filed a pre-motion letter regarding their contemplated motion for summary judgment. Dkt. 134. They sought leave to move for summary judgment both on the merits of each side's breach claims and on defendants' contractual-standing defense. On April 2, 2021, PartnerRe opposed that motion, arguing that the case should instead proceed to a bench trial. Dkt. 135. On April 12, 2021, the Court held a pre-motion conference. At that conference, the Court permitted defendants to move for summary judgment "limited to the issue of plaintiff's contractual standing," but held that, should that defense not prevail, the remaining, merits issues should proceed directly to a bench trial. Dkt. 141; *see* Dkt. 142 ("Tr.") at 5, 14.

On April 27, 2021, defendants moved for summary judgment, Dkt. 144, and filed a memorandum of law in support, Dkt. 145 ("Def. Mem."); a Local Rule 56.1 statement, Def. 56.1; and the Warns declaration, with supporting exhibits. On May 11, 2021, PartnerRe opposed that motion, Dkt. 149 ("Pl. Mem."), and filed a counter-statement to defendants' Local Rule 56.1 statement, Pl. 56.1, and the Friedland declaration, also with supporting exhibits. On May 18, 2021, defendants replied, Dkt. 151, and filed a response to PartnerRe's Local Rule 56.1 counter-statement, Def. Reply 56.1.

## II. Legal Standards Governing Motions for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of proving the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

## III. Discussion

In moving for summary judgment, defendants argue that PartnerRe lacks contractual standing to sue for breach of the Merger Agreement. They contend that PartnerRe lacks the right to sue for that breach in its capacity as Stockholder Representative, as a third-party beneficiary of the Merger Agreement, or as Entitle's assignee under the Assignment. As to the latter, they maintain that PartnerRe's purported assignment is void under the Merger Agreement's anti-assignment clause. PartnerRe responds with several alternative arguments. Relevant here, it argues that the Assignment is valid, despite the Merger Agreement's anti-assignment clause, because Entitle assigned only its claim for damages, not any contract rights or duties under the Merger Agreement. PartnerRe also argues that it has standing as a party to the Merger Agreement, and that defendants' conduct, both before and during this litigation, create a genuine dispute of material fact as to whether it has waived its standing defense.

The Court finds PartnerRe's first argument sufficient to resolve that motion, and holds with PartnerRe.[3] Whether or not PartnerRe originally had standing to sue under the Merger

---

[3] Defendants characterize PartnerRe's position as "inconsistent," fault it for asserting multiple potential bases for its standing, and imply that the Court should assess both PartnerRe's standing as Stockholder Representative and as an assignee of Entitle's claim in order to properly allot damages among PartnerRe, Entitle, and Entitle's stockholders. Def. Mem. at 10–11. The Court

8

Agreement, either in its capacity as Stockholder Representative or as a third-party beneficiary, it clearly gained standing to pursue this action for damages when Entitle assigned it the right to do so. Accordingly, the Court denies defendants' motion.

### A. Applicable Legal Standards

"Under Delaware law, only parties to a contract and intended third-party beneficiaries have standing to sue for breach of the contract." *Ark. Tchr. Ret. Sys. v. Alon USA Energy, Inc.*, C.A. No. 2017-453 (KSJM), 2019 WL 2714331, at *10 (Del. Ch. June 28, 2019).[4] In addition, such parties may, at times, assign their rights under the contract to others, who would otherwise be considered "strangers to [the] contract." *Insituform of N. Am., Inc. v. Chandler*, 534 A.2d 257, 268 (Del. Ch. 1987); *see Se. Chester Cnty. Refuse Auth. v. BFI Waste Servs. of Pa., LLC* ("*Southeastern II*"), No. CV K14C-06-016 (JJC), 2017 WL 2799160, at *5 (Del. Super. Ct. June 27, 2017); *Spine Care Del., LLC v. State Farm Mut. Auto. Ins. Co.*, C.A. No. 04C-04-264 (JEB), 2006 WL 3334964, at *3 (Del. Super. Ct. Nov. 17, 2006).

---

agrees with PartnerRe that such critiques are misplaced. To defeat defendants' motion, PartnerRe need only establish that, under some available theory, it has contractual standing to pursue its claim (or that there are at least genuine disputes of material fact on that question). Further, PartnerRe, not Entitle or its individual shareholders, is the plaintiff here; if it establishes defendants' liability at trial, the distribution of any resulting damages among interested parties is a matter of contract among those entities, not a question affecting its standing to pursue this lawsuit. *See, e.g.*, Assignment ¶ 2.1 ("Partner Re shall have, as among the parties and their Affiliates, the exclusive right . . . to retain all proceeds from, Broken Deal Claims of any kind."). Nor do defendants offer any authority for the notion that, if PartnerRe had standing both as Stockholder Representative and assignee, such would validly entitle it to a double recovery.

[4] As the Court has previously recognized in this case, despite use of the term "standing," federal and Delaware courts "do not apply constitutional standing analysis when determining the right of a purported non-party to sue under a contract." *Partner Reinsurance Co. v. RPM Mortg., Inc.*, No. 18 Civ. 5831 (PAE), 2020 WL 2904862, at *2 (S.D.N.Y. June 3, 2020). Instead, "they do so in addressing either a form of prudential standing or, most frequently, when determining, as a matter of contract interpretation, whether a plaintiff had a right to sue under the relevant contract, as a third-party beneficiary or otherwise." *Id.* (collecting cases).

As to the latter situation, however, parties may—as they have here—impose limits, through their agreement, on their ability to assign rights, powers, duties, and interests under the contract. "Delaware courts recognize the validity of clauses limiting a party's ability to subsequently assign its rights," but "construe such provisions narrowly because of the importance of free assignability." *Southeastern II*, 2017 WL 2799160, at *5 (footnotes omitted). In doing so, they generally follow the approach in the Restatement (Second) of Contracts ("*Restatement*") § 322(2) (1981). That section provides that "[a] contract term prohibiting assignment of rights under the contract, unless a different intention is manifested, . . . does not forbid assignment of a right to damages for breach of the whole contract or a right arising out of the assignor's due performance of his entire obligation[.]"[5] *See, e.g.*, *Southeastern II*, 2017 WL 2799160, at *5 & nn.35–36 (citing Restatement § 322(a)); *Se. Chester Cnty. Refuse Auth. v. BFI Waste Servs. of Pa., LLC*, No. K14C-06-16 (JJC), 2015 WL 3528260, at *4 (Del. Super. Ct. June 1, 2015) ("*Southeastern I*") (rejecting argument that anti-assignment applied to claim for damages in part because such would conflict with Restatement § 322(2)(a)); *see also In re Woodbridge Grp. of Cos.* ("*Woodbridge II*"), 606 B.R. 201, 206–07 (D. Del. 2019) (applying Delaware law and Restatement § 322(a)); *cf. In re Abound Solar Mfg., LLC*, 547 B.R. 611, 619 (Bankr. D. Del. 2016) (applying Delaware law and the same rule provided in section 322(2)(a), without citation to that provision). Thus, unless the parties to a contract state otherwise, the prohibition of assignments of a party's rights under a contract leaves a party free to assign its "breach of contract claim." *In re Abound*, 547 B.R. at 619.

---

[5] As discussed below, the *Restatement* also provides that, unless otherwise stated, breach of an anti-assignment provision "gives the obligor a right to damages for breach of the terms forbidding assignment but does not render the assignment ineffective[.]" Restatement § 322(2)(b).

10

That rule makes good sense. As stated in the first comment to section 322, titled "Rationale," the main purpose of anti-assignment provisions is to prevent assignments that "would materially change the obligor's duty," deprive a party of their bargain where they have "a substantial interest in personal performance by the obligee," or give rise to "conflicting claims and the hazard of double liability." Restatement § 322 cmt. a. These rationales are not implicated by the assignment of a claim for damages in most cases because "personal performance is immaterial, . . . the recipient of the [damages] is fungible," and "there is no risk of double liability" where, as here, the right to pursue a breach claim is exclusively assigned to a third party. *Gallagher v. S. Source Packaging, LLC*, 564 F. Supp. 2d 503, 507 (E.D.N.C. 2008).

Courts across the country, construing the laws of various states, have thus applied Restatement § 322(2), or the principles it embodies, to permit assignments of claim for damages even where the relevant parties' contract includes a clear prohibition on the assignment of rights or duties. *See, e.g.*, *Mut. Assignment & Indemnification Co. v. Lind-Waldock & Co.*, 364 F.3d 858, 861 (7th Cir. 2004) ("The district court apparently assumed that 'rights . . . pursuant to this Agreement' includes the right to damages for breach *of* the Agreement, in addition to rights *under* the Agreement. Yet Illinois law . . . is to the contrary. Illinois distinguishes between rights and duties under an agreement and rights to damages following breach."); *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1235 (10th Cir. 1988) ("Since the ability to assign a claim for damages is generally not prohibited by an assignment clause [under Utah law], we decline to read the phrase 'the right . . . under and in connection with' as altering a party's ability to assign a claim for money damages."); *Avery Outdoors LLC v. Outdoors Acquisition Co.*, No. 16 Civ. 2229 (SHL) (TMP), 2016 WL 8738242, at *3 (W.D. Tenn. Dec. 6, 2016) ("An anti-assignment provision does not prohibit the assignment of a right to sue under the contract"

under Tennessee law.); *In re Abound*, 547 B.R. at 619 ("In this case, the Trustee has . . . [only] assigned his breach of contract claim. That is not precluded by the anti-assignment provision of the Auction Agreement [under Delaware law].") *Gallagher*, 564 F. Supp. 2d at 507 (prohibition on assignment of rights under the contract "does not address whether the right to damages upon breach . . . may be assigned" under Indiana law, and thus "[t]he Anti-Assignment Clause and Restatement (Second) of Contracts § 322 appear to doom [defendant's] argument that NPSG's transfer was void"); *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, No. 09 Civ. 181 (DAE), 2011 WL 2116989, at *9 (D. Haw. May 25, 2011) ("Moreover, other courts facing this exact scenario have concluded that a contract provision prohibiting the assignment of the contract itself (or an interest therein) does not prohibit the assignment of a claim for breach of the same contract. The Restatement of Contracts, which Hawaii courts follow, is in accord with these decisions." (citation omitted) (collecting an "abundance of authority")), *aff'd*, 531 F. App'x 784 (9th Cir. 2013); *Health All. Network, Inc. v. Cont'l Cas. Co.*, 354 F. Supp. 2d 411, 417 n.8 (S.D.N.Y. 2005) ("[A] non-assignment clause does not prohibit assignment of a right to damages for breach of the whole contract" under Illinois law); *Elzinga & Volkers, Inc. v. LSSC Corp.*, 838 F. Supp. 1306, 1314 (N.D. Ind. 1993) ("[C]ase law of most states is in accord that a prohibition on assignment does not prohibit assignment of claims for money damages for nonperformance.") (collecting cases); *Cordis Corp. v. Sonics Int'l, Inc.*, 427 So. 2d 782, 783 (Fla. Dist. Ct. App. 1983) (contract that "forbids only the assignment of a party's 'rights' under a contract simply does not preclude the assignment of an accrued claim for damages arising from its breach" under Florida law); *see also DW Last Call Onshore, LLC v. Fun Eats & Drinks LLC*, No. 17 Civ. 962 (JMF), 2018 WL 1470591, at *3 (S.D.N.Y. Mar. 23, 2018) ("Under New York law . . . no assignment clauses . . . do not apply to assignment of claims after loss has occurred" (citation omitted)).

## B. Application

The parties largely agree as to the above principles and several other basic points. Defendants do not dispute that Entitle, as RPM's direct counterparty under the Merger Agreement, had standing to pursue a claim for a breach of that agreement. *See* Def. Mem. at 13 ("[A]ny cause of action for breach of the Merger Agreement would have rested with Entitle[.]"). They also recognize that Entitle, PartnerRe, and Radian entered into the Assignment, under which Entitle at least purported to "assign to Partner Re the exclusive right to pursue any claims [Entitle] may have in respect of" the Merger Agreement. Def. 56.1 ¶¶ 17–18; Pl. 56.1 ¶¶ 17–18. And all agree that, in general, Delaware courts follow section 322 of the Restatement in deciding the effect of anti-assignment terms in contracts. *See* Def. Mem. at 17–19; Pl. Mem. at 7–8.

They part ways, however, as to how those principles apply to the terms of the agreements at issue. PartnerRe argues that, under the above authorities, the preclusion of the assignment of "any or all of [Entitle's] rights . . . under this Agreement" did not affect Entitle's ability to assign its claim for a breach of the entire Merger Agreement, as it did in the Assignment. Defendants counter that the Merger Agreement includes language, absent from the cases reviewed above, which courts applying Delaware law have held departs from the default rule under Restatement § 322(2). *See Woodbridge II*, 606 B.R. at 207; *see also* Restatement § 322(2) (default rules apply "unless a different intention is manifested"). They argue that the anti-assignment clause's statement that any attempted assignment "shall be void" overcomes the presumption under Delaware law that the prohibition of the assignment of contract *rights*, without more, does not bar the assignment of a claim for *breach* of the whole contract. *See* Def. Mem. at 17–18; Def. Reply at 1–3 & n.4.

13

PartnerRe has the better of this dispute. The plain text of the anti-assignment clause restricts only Entitle's power to assign rights and duties under the Agreement. It does not refer to claims for damages at all, let alone unambiguously preclude Entitle from assigning such claims. *See Woodbridge II*, 606 B.R. at 207 ("[T]he Comment to Section 322 of the Restatement clarifies that it is not the purpose of the section to invalidate all anti-assignment provisions. It merely requires, like Delaware law, that they be unambiguous."). That restriction "does not address whether the right to damages upon breach . . . may be assigned"; thus "the Anti-Assignment Clause and Restatement (Second) of Contracts § 322 appear to doom [defendants'] argument that [Entitle's] transfer was void." *Gallagher*, 564 F. Supp. 2d at 507.

Defendants' contention that the "void" language in the Merger Agreement's anti-assignment clause requires a different result is unpersuasive. That argument conflates two issues: the *scope* of an anti-assignment provision (*i.e.*, what assignments it prohibits) and the *effect* of that provision (*i.e.*, the implications of a violative assignment). The former is the subject of Restatement § 322(2)(a), and, as discussed, is the dispositive issue here. The latter is the subject of Restatement §322(2)(b), which provides that, unless a different intent is manifested, the breach of an anti-assignment term "gives the obligor a right to damages for breach of the terms forbidding assignment but does not render the assignment ineffective." A specification that any attempted assignment would be "void," as is present here, may rebut that second presumption, rendering an assignment not only a breach of contract, but also legally ineffective. Defendants do not, however, explain why such language would alter the *scope* of the anti-assignment clause, so as to forbid the assignment of claims that, under Restatement § 322(2)(a), would otherwise remain freely assignable. *See, e.g.*, *Gallagher*, 564 F. Supp. 2d at 507 ("[T]he 'null and void' provision of the Anti-Assignment Clause does not address whether the right to damages upon

14

breach or the right to payment arising out of [defendant's] due performance may be assigned."). Their point that several of the above cases did not involve "void" language like that present in the Merger Agreement's anti-assignment clause thus misses the mark. It is both factually wrong, *see, e.g.*, *id.* at 507 (discussing "null and void" language and rejecting that such overcomes the Restatement § 322(2)(a) presumption), and logically unsound.

Rather than provide that missing logical link, defendants mainly rely on *Woodbridge II*, which affirmed the bankruptcy court's enforcement of anti-assignment provisions rendering any purported assignments "null and void." *See* 606 B.R. at 207, *aff'g*, *In re Woodbridge Grp. of Cos.* ("*Woodbridge I*"), 590 B.R. 99, 105 (Bankr. D. Del. 2018). But the reasoning of that decision is opaque. Regardless, for several reasons, it does not embrace the broad proposition defendants impute to it: that any provision deeming assignments of rights "void" unambiguously overcomes the presumption that a bar on the assignment of contract rights leaves permissible the assignment of claims for breach of contract.

First, the context at issue in *Woodbridge* was factually distinct. It did not involve a breach of contract claim. Instead, a bankruptcy claimant who had been assigned all of two parties' "right, title, and interest" in several promissory notes and loan agreements, *as well as* the parties' causes of action arising from those documents, had filed a proof of claim in the bankruptcy proceeding asserting a secured claim based on the promissory notes. *Woodbridge II*, 201 B.R. at 204. The debtors there, citing anti-assignment provisions in the notes and loan agreements, objected. They argued that the assignments to the claimant were "null and void." *Id.* Rejecting the claimant's argument that it had merely been assigned "causes of action" or "claims" arising from the debtors' breach of the agreements, the court sided with the debtors. To be sure, in doing so, it cited the "null and void" language on which the debtors relied. *See id.*

15

at 207.  But when addressing the specific argument advanced here, it held only that "contrary case law regarding the 'assignment of claims' is inapposite" and "unsupported by [claimant's] own proof of claim, the language of the relevant documents, and the case law." *Id.* at 207 (citing *Avery Outdoors*, 2016 WL 8738242, at *1).  Given that the *Woodbridge* claimant sought to assert a secured claim for payment under the promissory notes, not a breach of contract action, it is thus doubtful that the case's holding on this discrete point—based as it was on the specific terms of the "proof of claim, the language of the relevant documents, and the case law"—embraces the broad proposition that defendants here urge.[6]

Second, even if *Woodbridge* had held that "null and void" language can expand the types of assignments prohibited by an anti-assignment clause, as some cases have suggested, *see, e.g.*, *BRDL, LLC v. RD Legal Funding, LLC*, No. A-3674-18, 2021 WL 1499955, at *4 (N.J. Super. App. Div. Apr. 16, 2021) (recognizing that "a contract may bar assignment of rights, without barring assignment of damage claims," but following *Woodbridge* in holding the latter claims barred, too); *see also Walgreen Co. v. Johnson & Johnson*, 375 F. Supp. 3d 616, 626–27 (E.D. Pa. 2019) (similar under New Jersey law, without citing *Woodbridge*), *rev'd and remanded on other grounds*, 950 F.3d 195 (3d Cir. 2020), that conclusion is unpersuasive.  That is so for the reasons already given.  These include that such a rule would conflict with both the majority

---

[6] Similarly, several of defendants' other cases involve the assignment of contract rights, such as the right to receive payment under promissory notes, not merely the assignment of a claim for breach of contract.  *See, e.g.*, *Coeur Mining, Inc v. Compania Minera Pangea, S.A. de C.V.*, C.A. No. N18C-12-264 (AML) (CCLD), 2019 WL 3976078, at *3 (Del. Super. Ct. Aug. 22, 2019) (plaintiffs "conceded at oral argument that the Anti-Assignment Clause, by its plain language, would bar assignment of the Conditional Payment," but argued that such would be "absurd" or, in the alternative, that the anti-assignment clause did not survive closing, but not that they had a valid assignment of a claim to damages for breach of contract); *Paul v. Chromalytics Corp.*, 343 A.2d 622, 625–26 (Del. Super. Ct. 1975) (holding assignment of right to receive payment on promissory notes void under anti-assignment provision).

16

approach of other jurisdictions and Restatement § 322(2)(a), and would fail to construe the anti-assignment clause "narrowly," as Delaware courts are required to do. *Southeastern II*, 2017 WL 2799160, at *5. In fact, at least one Delaware court has suggested that it would reject such a rule precisely because it would depart from the Restatement's approach. *See Southeastern I*, 2015 WL 3528260, at *4 ("To the extent that the *Paul* decision would prohibit the claim at issue, however, it would be inconsistent with Restatement (Second) of Contracts § 322 (1980) which does not prohibit a suit for damages under such circumstances."); *see also Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994) (federal courts applying uncertain state law must "predict how the highest court of the forum state would resolve the uncertainty or ambiguity"). It does not follow that, without more, a contract term expanding the *effect* of an anti-assignment provision—such as the "void" term here—also unambiguously broadens the *scope* of what types of assignments the provision covers.

Nor would such a rule further the policy interests associated with the enforcement of anti-assignment provisions. Surely, defendants would prefer not to face at all the legal claims that PartnerRe, following Entitle's assignment of claims to it, has pursued in this action. But they have not explained why, as between Entitle (or Radian, as its successor in interest) and PartnerRe, it is significant whether one or the other pursued this claim for breach of contract. Given that Entitle assigned, and PartnerRe has pursued, only post-breach damages claims, the assignment has not "materially change[d]" the duties of any party to the Merger Agreement. Restatement § 322 cmt. a. Nor has it affected defendants' interests in Entitle's "personal performance" of duties under that agreement. *Id.* And given that the assignment vested PartnerRe with the exclusive ability to pursue such an action, there is no danger of "conflicting claims" or "double liability." *Id.*; *see also Gallagher*, 564 F. Supp. 2d at 507.

The Court thus does not find any basis, in the parties' contract, the case law, or the relevant principles of Delaware contract law, to hold invalid Entitle's assignment of its claim for breach of the Merger Agreement, or PartnerRe's acquisition of that claim, through the Assignment. Regardless of whether PartnerRe independently had standing to sue as a party under the Merger Agreement before that assignment, and even assuming that defendants have not waived their contractual standing defense as PartnerRe contends, PartnerRe acquired such standing through the Assignment. That agreement, the Court holds, was unaffected by the Merger Agreement's anti-assignment clause. PartnerRe has contractual standing to pursue its claims. The Court thus denies defendants' motion for summary judgment for lack of contractual standing.

## CONCLUSION

For the foregoing reasons, the Court denies defendants' motion for summary judgment. This case will now proceed to a bench trial. The parties are directed to submit a joint pretrial order consistent with the Court's individual rules governing bench trials, along with all other filings required by those rules, by July 29, 2021. The parties are further directed to submit a joint letter by July 8, 2021, setting out the anticipated duration of a bench trial and identifying any considerations bearing on the dates for which a bench trial is to be scheduled, as well as any matters to which the Court ought to attend prior to scheduling such a trial.

The Clerk of Court is respectfully directed to terminate the motion pending at docket 144.

SO ORDERED.

PAUL A. ENGELMAYER
United States District Judge

Dated: July 1, 2021
New York, New York